## LODANO *vs.* THE STATE.

1. When an offence is created and fully defined by statute, it is sufficient to charge it in an indictment in the words of the statute.
2. The useless repetition of words in an indictment does not vitiate it, but the superadded words may be rejected as surplusage.
3. The Legislature is not restricted by the State constitution from imposing such conditions as may be deemed proper and required by the good of the community, upon those who are allowed to retail spirituous liquors, both as regards the persons to whom and the quantities in which they may sell.
4. A free person of color, whose mother was an inhabitant of Mobile when the territory was ceded by Spain to the United States, is included in the act of 1852 (Pamphlet Acts 1851-2, p. 80), prohibiting the sale of spirituous liquors to free persons of color.

APPEAL from the City Court of Mobile.
Tried before the Hon. ALEX. McKINSTRY.

THE defendant was indicted for retailing spirituous liquors to a free person of color. The indictment is as follows: "The grand jury of said county charge, that, before the finding of this indictment, Giobbe Lodano did retail or sell to John Jones, otherwise called Budd, then and there a free person of color, did then and ‘there sell or retail spirituous liquors, against the peace and dignity of the State of Alabama."

The defendant demurred to the indictment, but the court overruled the demurrer, and he then pleaded not guilty. On the trial the defendant proved, that Jones or Budd, to whom the liquors were sold, was the child of a free woman of color, who was an inhabitant of Mobile before and at the time when the territory was ceded to the United States; that both she and his father, who was a negro, had always been free. On this proof the defendant asked the court to instruct the jury, "that, if they believed from the evidence that the person named John Jones, or Budd, in the indictment, was a free person of color, and that he was a descendant of an inhabitant of this territory at the time of the treaty between Spain and the United States, then they cannot find the defendant guilty, although they may be satisfied from the testimony that he

retailed or sold spirituous liquors to said John Jones, *alias* Budd." This charge the court refused, and the defendant excepted.

It is here insisted, that it was error to overrule the demurrer, and to refuse the charge.

PERCY WALKER, for the appellant :

1. The demurrer should have been sustained, because the indictment was wanting in requisite certainty.

2. The charge asked should have been given. The evidence showed, that the mother of the person to whom the liquor was sold was an inhabitant of Mobile when the territory was ceded by Spain to the United States. The sixth article of the treaty of cession (U. S. Statutes at Large, 8th vol., pp. 256, 258) is as follows : "The inhabitants of the territories which his Catholic Majesty cedes to the United States by this treaty, shall be incorporated in the Union of the United States, as soon as may be consistent with the principles of the Federal constitution, and admitted to the enjoyment of all the privileges, rights and immunities of the citizens of the United States." In view of this treaty stipulation, our Legislature has, at various times, by express enactments, declared that our penal laws, relative to slaves and free persons of color, are not applicable to the "inhabitants" of these ceded territories, or their descendants. This can be seen by a reference to our old statutes prohibiting the education of slaves ; and the latest legislative acknowledgments of their exemption may be found in the Code (§§ 1033, 1034, 1035, 1036, 1037.) If a descendant of a free person of color, who was an inhabitant of Mobile at the time of the treaty, has the right to retail spirituous liquors (as admitted by section 1037 of the Code), it follows, that he cannot be deprived of the right to buy at retail so long as other citizens are permitted to do so, and that no penalty can be enforced against a white person for selling to him. Independent of legislative recognitions of the rights of this class as citizens, they have been too often admitted by the Federal and State courts to require argument. These rights are secured by the treaty, and cannot be destroyed or diminished by any State tribunal. The *status* of the person to whom the liquor was sold, is determined by

that of his mother, and it is immaterial to what race his father belonged.

M. A. BALDWIN, Attorney General, *contra:*

1. The indictment is sufficiently certain and intelligible. The repetition of some of the words is mere surplusage, and may be stricken out without vitiating the instrument.

2. The statute, under which the indictment was framed, makes no exception of any particular class of free persons of color. The presumption is, since there is no exception, that it was not intended to exempt this class of persons.

LIGON, J.—There was no error in overruling the demurrer. The indictment is evidently framed under the act of the 9th of February, 1852 (Sess. Acts 1851-2, p. 80), which enacts, that "it shall not be lawful for any person or persons to retail or sell, in any quantity, spirituous liquors to any free person of color." It has been frequently held, that, when an offence is *created* and fully *defined* by a statute, it will be sufficient to charge it in the words of the statute. Such is the case in the present indictment; and the mere fact that the words "then and there did retail and sell" are uselessly repeated, does not affect it in any way, as, on their recurrence, they are surplusage, and may be struck out without injury to the indictment.

The charge asked was properly refused. The Legislature of this State is not restricted by the constitution from imposing such conditions as they may deem proper, or as in their opinion the good of the community may require, upon those who are allowed to retail spirituous liquors, both as it regards the persons to whom they may sell, and the quantities in which they may be sold. This power, in some form, has been constantly exercised in the license laws of this State. The retailer has never been allowed to sell his liquors to persons of known intemperate habits, nor, for many years past, could he sell to students, minors or slaves, unless it was done under certain restrictions imposed by law. But it is insisted, that inasmuch as John Jones, to whom the sale was made in this case, is a descendant of a woman of color, who was an inhabitant of Mobile under the Spanish rule, and as such included in the sixth article of the treaty by which Spain ceded that

city and the adjacent territory to the United States, which reserves to persons of his class greater rights than belong to others of the same class in other portions of the State, therefore, when the terms "free persons of color" are used in our statutes, they are not included unless specially named. Such is not the rule by which statutes should be interpreted. When a generic term is used, without any words of restriction in the statute itself, it includes every species which belongs to it; and in order to exempt the free persons of color protected by the treaty of cession from Spain to the United States from being included in the act of 1852, it should have been declared in the act itself that the terms used in it should not apply to them. Such is not the case, and we have no hesitation in saying, that it is as much a violation of that act to sell to one of them, as to any other free person of color in the State.

There is no error in the judgment, and it is consequently affirmed.