[Crim. Nos. 33, 34, 35.   Filed October 16, 1885.]

[S. C. 8 Pac. 295.]

THE UNITED STATES OF AMERICA, Plaintiff and Respondent, v. AMMON M. TENNEY, Defendant and Appellant.
SAME v. PETER J. CHRISTOFFERSON.
SAME v. I. C. KEMP.

1. CRIMINAL LAW—INDICTMENT UNDER EDMUNDS ACT—POLYGAMY—
ALLEGATION OF COHABITATION IN SAME COUNT FOLLOWING CHARGE
OF OFFENSE OF POLYGAMY HARMLESS SURPLUSAGE.—Objectionable
words, referring only to cohabitation after a proper allegation of
a polygamous marriage, in a count of an indictment under the Edmunds Act, are harmless surplusage, and do not vitiate the indictment.

2. SAME—EVIDENCE—GENERAL REPUTATION AS CORROBORATIVE EVIDENCE
IN PROOF OF MARRIAGE—IN ABSENCE OF FEDERAL STATUTE TERRITORIAL LAW GOVERNS RULE OF PROOF—SECTION 123, C. 10, COMP.
LAWS 1871.—Evidence of general reputation as to the relation of
husband and wife admissable   as corroborative proof of marriage
under territorial statute, *supra*, which in absence of congressional
enactment governs rule of proof in criminal cases of this character.

3. SAME—SAME—APPEAL AND ERROR—WHERE PARTY OPENS DOOR TO
EVIDENCE NOT STRICTLY ADMISSABLE HE WILL NOT BE HEARD TO
COMPLAIN ON APPEAL THAT HIS OPPONENT WAS PERMITTED TO FOLLOW.—Where the record shows that evidence as to facts occuring
without the jurisdiction of the court and prior to the finding of
the indictment was introduced by the defense the trial court is
justified in allowing the prosecution to follow.   The defense having
opened the door it will not be heard to complain.

4. SAME.—SAME—CENSUS RETURN PROPERLY FILED EVIDENCE OF ITS
CONTENTS—WITNESS REFRESHING RECOLLECTION—PRACTICE IN
PROOF OF FACTS SHOWN BY CENSUS RETURNS.—Census return filed
in the office of the secretary of the territory is by statute made an
"official document," and evidence of its contents. A census enumerator may use his official returns to refresh his memory.   The
independent recollection of a census enumerator as to facts stated
in his official returns and the official and authenticated returns
correct method of proving facts shown by returns.

5. APPEAL   AND   ERROR—INSTRUCTIONS—CHARGE   TO   JURY   TO   BE

CONSIDERED AS A WHOLE.—In the review of a charge to the jury the whole and entire charge should be considered together.

6. PRACTICE—TRIAL OF CAUSES UNDER FEDERAL STATUTES—IN ABSENCE OF CONGRESSIONAL ENACTMENT AS TO MATTERS OF PRACTICE LOCAL STATUTES PREVAIL.—Where in matters of practice the statutes of the United States are silent, in the territory or state where United States courts are held for the trial of causes under the United States laws, the local statutes may be invoked for the purpose of interpreting the law governing the practice and conducting the proceedings of the court.

7. STATUTES CITED—§ 123, COMP. LAWS ARIZ. 1877, COMP. LAWS, § 21, p. 397; COMP. LAWS, § 7, p. 571; PAR. 1891, COMP. LAWS.

8. CRIMINAL LAW—PROSECUTION UNDER "EDMUNDS ACT"—INSTRUCTIONS AS TO CONSTITUENT ELEMENTS OF MARRIAGE CONTRACT AND METHOD OF PROOF—REFERENCE TO TERRITORIAL STATUTES PROPER IN INSTRUCTIONS WHEN TAKEN IN CONNECTION WITH OTHER PORTIONS OF CHARGE.—Where in prosecution under the "Edmunds Act," the court in instructing the jury as to the constituent elements of the marriage contract and the manner of the proof of polygamous marriages read par. 1891, and portion of § 123, c. 10, Comp. Laws, defining marriage and the manner of proof of polygamous marriages, which statutes correctly embodied the essential points which would have been the law even in their absence, a reference to them is unobjectionable, when taken in connection with the other portions of the charge by which the jury were distinctly instructed that they must be satisfied that the first marriage existed and that the second marriage was contracted within the territory, within the time fixed by the United States Statute defining and punishing polygamy.

9. CRIMINAL LAW—PINNEY, J., CONCURRING SPECIALLY—EVIDENCE—ADMISSIONS OF DEFENDANT THAT WOMAN HE LIVES WITH IS HIS WIFE PRIMA FACIE EVIDENCE OF MARRIAGE CONTRACT.—Where a man deliberately admits that the woman he lives with is his wife such admission is prima facie evidence that there has been a marriage contract between the parties.

OPINION ON RE-HEARING, post, 127.

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Yavapai. Affirmed.

The facts are stated in the opinion.

John A. Rush, and J. C. Herndon, (Thos. Fitch, of counsel,) for Appellants.

The demurrer to the first count should have been sustained. One of the grounds upon which the demurrer to that count was based, was that the facts stated and set forth in said count constituted two distinct and separate offenses, one a felony and the other a misdemeanor. In other words, the said count charges that the defendant being a married man, and while his wife was living, he not having been divorced from her, unlawfully married another woman. It seems to us that these facts under the first section of the act of Congress commonly known as the ''Edmunds Bill'' clearly constituted the act of polygamy, which is punished as a felony. The same count then proceeds to state and charge that the defendant then and there unlawfully and feloniously cohabited with two women, which last fact so charged is made an offense by the third section of said ''Act of Congress'' and is punishable as a misdemeanor; the said count after thus stating the fact of marriage and the fact of unlawful cohabitation, then concludes by reason thereof, the defendant is guilty of polygamy. Now we ask by reason of what, is it, that he is guilty of polygamy? Is it by unlawful marriage, or by unlawful cohabitation, or both? We submit that an indictment in charging an offense must be certain to a certain intent, that nothing must be left to intendment or deduction. We submit that where facts are stated constituting an offense under one section and additional facts constituting another offense under a different section, the added facts cannot be treated as surplusage. See Section 265, pp. 129, 130, of Comp. Laws. As to certainty required, see Secs. 214, 215, p. 124, Comp. Laws.

The court erred in permitting Juan Sepulveda to testify to the facts occurring without the jurisdiction of the court and more than three years before the finding and presentation of the indictment. The fact that the defendant lived with, held out and introduced these women as his wives in Utah six or seven years ago, in our judgment could not in any way even tend to prove a marriage within this territory after the passage of the act creating the offense. We submit

that Congress at the time of the passage of the law creating
the offense, is presumed to have known the common law
rules of evidence necessary to prove the offense according to
the common law, and having failed to provide, in the Act
creating the offense, as to the rules governing the testimony,
or the character of the evidence necessary to prove the offense,
it is but a reasonable presumption that congress intended
that the offense should be proved by the general rules of
evidence, according to the common law, except so far as lim-
ited by the United States statutes. We maintain that no
local law can be invoked to interpret the offense, or prescribe
the character of evidence by which the offense might be
proved. The court erred in charging that "when such sec-
ond marriage shall have taken place without the territory,
cohabitation in this territory after such second marriage
shall be deemed the commission of the crime of bigamy."
That is the definition of bigamy under the territorial statute,
and this is a prosecution under the U. S. statute which is
entirely different. If the court was correct in its charge then
a man may be prosecuted twice and twice punished for the
same offense. The marriage in Utah would be one offense
and the cohabitation in this territory another, both under
the same statute, and conviction under one set of facts in
Utah would be no bar to a conviction in Arizona under the
other facts, or *vice versa*. Such was certainly not the intent
of the law creating the offense.

Is polygamy a continuing offense? Does the statute of lim-
itations never run against this crime? When is the crime
of polygamy complete? Is it at the time the marriage con-
tract is entered into? If so, then from that moment the
statute begins to run. When does a man marry a woman, and
how often does he marry the same woman? Does he marry
her every time he crosses the boundary line of a State or
Territory, taking her with him and calling her his wife?
Does he marry every day that he lives and cohabits with her
as his wife? Is the marriage contract renewed at the birth
of each child, or upon each occasion when a man holds out
his wife to the world as his wife and introduces her as such?
If the defendant married two women in the Territory of
Utah ten years ago, does the fact that he afterwards came

to this Territory with the same women, and when here recognized and introduced and acknowledged them as his wives, constitute marriage in this Territory as contemplated by the act of Congress, under which the indictment was found? It strikes us that the act of Congress was framed to meet a case of this very kind. Why was unlawful cohabitation made a crime in the act of Congress? Simply to meet the case of a man who had unlawfully married two or more women years prior to the passage of the act, and against which the statute of limitations had run. By the third section of the act he could be punished for continuing to live and cohabit with the polygamous or bigamous wife after the passage of the law, but could not be punished for unlawful marriage, on account of the statute of limitations. The gist of the crime of polygamy is *marrying*, not *cohabiting* with her. And while it is true that consent is necessary to the marriage contract yet after the contract is made and entered into and the parties consent to live together as man and wife, such consent after marriage is not a renewal of the contract of marriage. The law of Arizona, the local staute of bigamy as given by the court in the charge to the jury, does not only make the second marriage criminal, but also makes the cohabitation after marriage part of the crime of bigamy, or in certain cases the very crime of bigamy. The law of the United States does not do this, but alone makes the marrying the crime. It also makes cohabitation after such marriage a distinct offense; one of a different grade and character. This distinction is made clear by many decisions. *Brewster* v. *State*, 59 Ala. 101-2; *People* v. *Mosher*, 2 Parker Crim. Rep. 195; *Yarnall* v. *St. Louis etc. Ry. Co.*, 75 Mo. 575; *State* v. *Barnett*, 83 N. C. 615; *State* v. *Sloan*, 55 Iowa, 217, 7 N. W. 516.

In Arizona and in Iowa, and perhaps some other states, the statutes defining bigamy make *unlawful cohabitation with an unlawful or bigamous or polygamous wife the crime* of bigamy itself. They make cohabitation the offense, but Congress makes the marrying a crime and the cohabitation a misdemeanor and not the crime of polygamy or any part thereof. Had the indictment been under the Arizona statute the charge would have been apt, but under the U. S. statute

it was fatally erroneous. Marriage is a civil contract, and the *contract* is complete when a man and woman consent to become, and do become, man and wife. The essence of the contract, as of all contracts, is the consent of the parties, and its validity does not depend upon any form of celebration, or *upon* the cohabitation. *Hayes* v. *People*, 25 N. Y. 397, 82 Am. Dec. 364; Swinburne on Espousals, Sec. 4.

We admit that the contract of marriage is continuing so far as the obligations and responsibilities of the parties are concerned, as in any other contract, but that it becomes a new contract, a new marriage, each succeeding day the parties consent to and carry out the obligations and relations imposed by the original contract we cannot agree.

It is true, in our judgment, that the statute is sufficiently broad to reach .cohabitation with two women without marriage, but we do not think it will be doubted that the main, if not the sole purpose of the third section of the act was to punish cohabitation, the result of polygamous marriages.

J. A. Zabriskie, U. S. Dist. Atty., Ed. W. Wells, Asst. U. S. Dist. Atty., for Respondent.

The existence of marriage may be shown by evidence of facts from which it may be inferred. *United States* v. *Miles*, 2 Utah, 25; *Miles* v. *United States*, 103 U. S. 311; Bishop, Statutory Crimes, Sec. 609; 1 Bishop, Marriage and Divorce, Secs. 229, 266, 247, 432, 226; *Camden* v. *Belgrade*, 75 Me. 126, 46 Am. Rep. 364. Of these reputation is one of the facts and competent, and with the other combining elements sufficient. 1 Bishop, Mar. & Div. Secs. 438, 439; 2 Greenleaf, Sec. 461 and notes; *Id.* 462 and notes. Deliberate admissions and confessions, competent to prove marriage. 2 Greenleaf, Sec. 204; *Miles* v. *United States*, 2 Utah, 25; *United States* v. *Miles*, 103 U. S. 311.

In the proof of the second marriage, the same kind of evidence is admissible as in proof of the first. 3 Greenleaf, Sec. 205.

The fact as to whether the defendant was married in Utah or not, has no relevancy to the subject, and can in no wise affect the question of his guilt or innocence. The doctrine

of *lex loci contractus* in regard to marriages, is not applicable in cases of polygamy. 1 Bishop, Mar. and Div. 511, 505-a, 507-b; Story on Conflict of Laws, 143 *et seq.*

And if the defendant was living in the commission of crime, as he was under the Act of Congress of 1862, and an impediment arose, as for instance the statute of limitations, and on coming into this Territory he continued the same criminal relations, the moment the impediment was removed, the criminal liability arose anew, and he became indictable therefor.

When the second marriage shall have taken place outside of this Territory, proof of cohabitation within this Territory, after the second marriage is proved, is proof of the offense of bigamy and polygamy. Sec. 123, Comp. Laws. The procedure and practice in the trials of cases in the District Courts of the Territory, arising under the laws of the U. S., are the same as those in violation of the Territorial statutes, and the rules of practice in the Territory are applicable, and govern the trials of cases arising under the laws of Congress, where those rules do not conflict with the Constitution and the Laws of the United States, and where the U. S. statutes are silent on the subject. *Clinton* v. *Englebrecht,* 13 Wall. 434; *Hornbuckle* v. *Toombs,* 18 Wall. 652; *Miles* v. *United States,* 103 U. S. 315; sec. 914, Revised Statutes, U. S.; *Reynolds* v. *United States,* 98 U. S. 145.

The laws of the United States being silent on the subject, Sec. 123 of Comp. Laws is the rule of decision in this case, and becomes applicable on the trial. Sec. 21, p. 397, Comp. Laws; Sec. 7, p. 571, Comp. Laws. Bigamy is a continuing offense. Sec. 72, p. 110, Comp. Laws; Sec. 123, p. 92, Comp. Laws.

Where there is no statute providing a form of marriage, it is not essential to prove a marriage by direct evidence. In support of the foregoing propositions the following cases are cited: *Taylor* v. *Sweet,* 3 La. 33, 22 Am. Dec. 156; *Holmes* v. *Holmes,* 6 La. 463, 26 Am. Dec. 482; *Sneed* v. *Ewing,* 5 J. J. Marsh, 460, 22 Am. Dec. 41; *Dyer* v. *Brannock,* 66 Mo. 391, 27 Am. Rep. 359; 1 Bishop, Mar. and Div., Secs. 488, 492; *Fornshill* v. *Murray,* Bland's Ch. 479, 18 Am. Dec. 344; *Hynes* v. *McDermott,* 91 N. Y. 451, 43 Am. Rep. 677.

FITZGERALD, J.—These three cases having been tried before the Third judicial district court, at Prescott, Chief Justice Howard, who presided at the trials, submitted the questions involved in the record on appeal to Judges Pinney and Fitzgerald. The facts involved in the three cases being similar, the questions of law in each case identical, (with the exception of the question of the admissibility of evidence of general reputation to prove the marriage relation, which question arose only in the *Case of Tenney*; no evidence of general reputation having been offered in the other cases,) by stipulation of parties the three cases were argued and submitted together.

The defendants were each convicted of the crime of polygamy, as charged in the first count of the respective indictments. Motion for a new trial was made in each case, and denied. The defendants were each sentenced to imprisonment in the Detroit house of correction for the period of three years and six months, and to pay a fine to the United States of $500. From the order overruling the motion for a new trial, and from the final judgment, the appeal is taken to this court.

The first assignment of error refers to the overruling of the demurrer to the first count of the indictment, on the ground that the facts alleged constituted two distinct causes of action. The first count, it is true, contains more than was necessary to properly charge the crime of polygamy, but the objectionable words, referring only to cohabitation after properly alleging the polygamous marriage, were clearly surplusage, and could not have misled or worked injury to the defendant. The first count charges the crime substantially in the language of the statute creating and defining the offense. The incorporating into the first count words in excess of what was absolutely necessary to charge the offense, not materially affecting, rendering doubtful, and by no possibility expanding, the offense charged, are but surplusage. It was clearly the intention of the pleader to charge the statutory offense of polygamy in the first and second counts of the indictment, and the offense of unlawful cohabitation by the third count. To say that the expansion of the first count, by the addition of language reciting cohabitation

after charging polygamy, and as following the polygamous marriage, could have misled or resulted injuriously to defendant is untenable.   *People* v. *Cronin,* 34 Cal. 191; *People* v. *Murray,* 67 Cal. 103, 7 Pac. 176; *Lodano* v. *State,* 25 Ala. 64; *United States* v. *Simmons,* 96 U. S. 360; 1 Bish. Crim. Proc. 193, 274, 277, 360, 371.   We are of the opinion that the ruling of the court below on the demurrer to the first count in the indictment was correct.

The second assignment refers to the ruling of the court in the *Tenney Case,* the question not arising in the other cases submitted, in allowing the witnesss Hubbell and Barth to testify to the general reputation, in the community where they lived, as to the relation of husband and wife existing between defendant Tenney and his wives.   The jury were distinctly charged that the evidence of general reputation, standing alone, would amount to nothing in such a case; that it was only an incident and circumstance to be considered in connection with all the other proof and circumstances, there being no positive proof of an actual marriage ceremony, to enable the jury to find and determine either the main fact charged, the polygamous marriage, or the unlawful cohabitation.   The doubt surrounding the admissibility of this character of evidence is removed by a reference to the territorial statute, to which it appears the trial court resorted, in the absence of a congressional enactment or regulation on the subject.   Section 123, c. 10, Comp. Laws, provides:

"It shall not be necessary to prove either marriage by the register or certificate thereof, or other record evidence; *but the same may be proved by such evidence as is admissible to prove a marriage in other cases.*"

That reputation is competent in "other cases" there can be no doubt.   1 Bish. Mar. & Div 438, 439; 2 Greenl. 461, 462.   If there was doubt as to the propriety of resorting to this character of evidence in a criminal case, in view of the statute above cited, and the charge of the court as to the proper application of that class of evidence that it was but secondary and circumstantial,—not sufficient in itself to warrant the finding of the polygamous marriage or cohabitation,—we are of the opinion that the defendant has no ground to complain of its admission.   Considering the silence

of the United States statute, with the fact that the territorial act above referred to provides for this kind of proof in such cases, notwithstanding the claim made by appellants that the territorial practice act cannot be applied to proceedings for violations of congressional laws, the court seems to have been warranted in the resort to this class of evidence; especially when its weight and sufficiency was carefully guarded, as in this case. In view of the very positive charge of the court that the jury must find, in order to convict the defendant, the marriage to have been contracted and entered into within the Third judicial district of Arizona, and since the passage of the act of congress referred to, (March 22, 1882,) the correctness of the ruling in admitting the evidence as corroborative only, as the court directed, is beyond dispute.

The fourth assignment refers to the testimony admitted by the court as to facts occurring without the jurisdiction of the court more than three years before the finding and presentation of the indictment. A sufficient answer to this objection is found in the fact that the record shows the defense to have "opened the door," and by the introduction of evidence as to what had occurred in Utah and other places before the time when it was by the indictment alleged that the defendants committed the crime of polygamy in Arizona, fully justified the court in allowing the prosecution to follow the defense over the wide range it had covered by its questions to the witness.

We are of the opinion, however, that the evidence, when confined, as it was by the charge of the court, to an interpretation of the character of the relation existing between the defendant and his two wives; and guarded as it was by the emphatic charge of the court as to the duty of the jury in finding the polygamous marriage within the district, and within the time alleged in the indictment,—could have done no injury to the defendant. And in view of the fact that the defendant first introduced, by repeated questions to plaintiff's witnesses, this evidence to which he now objects, we hold that he should not now be heard to except to it. A party who shrinks from an exposure of his ancient peccadilloes ought not to put them in evidence; having done so, he cannot be heard to complain that the court allowed the other party to follow in his lead.

The fourth and fifth assignments are practically covered by the consideration of the last, except that portion of the fifth which refers to the use of the census returns by the witness Ruiz to refresh his recollection in regard to the facts appearing upon the face of the returns. The witness Ruiz was the census enumerator for Apache county. The census return filed in the office of the secretary of the territory is by the statute made an "official document," and evidence of its contents. The witness Ruiz, who took the census, was permitted to examine and refer to the returns thus filed by him with the secretary, to refresh his memory. In addition to which the witness stated that from his own recollection, irrespective of the official return, he was able to state what the accused gave him as the names and number of the members of his family at the time he took the census. Taking the statement of the witness, the official and authenticated character of the document referred to, we can conceive of no more correct method of proving the facts shown by the census return than was allowed in this case.

The sixth assignment is fully answered by the consideration of the fourth and fifth.

The remaining assignments of error upon which the appeals in these cases are based refer to the charge of the court. We might dispose of the question raised by these assignments by the simple statement that the exceptions to the charge of the court are general, not specific; and do not, *to any extent,* designate the particular charge, part of charge, modification of request, or refusal to charge, to which defendant takes exception, or which he here incorporates into the record as the basis of the allegation of the erroneous charge of the trial court. We prefer, however, to consider the charge upon its merits, as a correct exposition of the law applicable to the case. We enunciate as the correct principle, in the consideration of the charge of the court, that the whole and entire charge should be considered together; that a dissection and presentation of isolated, fragmentary portions of the charge, so separated and divided as to pervert the meaning and sense which would naturally follow a consideration of the whole, is not the legal or fair presentation  to the appellate tribunal of the charge and

instructions of the trial court. The charge should be considered as a whole. The argument on appeal in these cases appears to have proceeded upon the erroneous impression on the part of appellants that while the indictment was found under the United States statute known as the "Edmunds Law," the trial and proceedings subsequent to arraignment were had under and pursuant to the territorial statute and practice. A reference to the record will show the fallacy of this claim, which is more than insinuated in the brief and argument of appellants. The trial court held that in a court with jurisdiction over offenses for violation of an act of congress, where the United States statutes were silent as to matters of practice, method of proof and procedure, the territorial statute might be invoked and applied to the case. Thus the United States statute being silent as to what shall constitute a marriage, as well as the method of proving marriage, the statute of the territory prescribing what shall be necessary to constitute a marriage, as well as the territorial law providing the manner of proving marriage, could be properly resorted to and applied. In this we think the trial court was clearly correct.

Congress has legislated for the punishment of the violation and prostitution of the marriage relation. It has not defined marriage. It has not formulated or provided any method or prescribed the character of proof in such cases. The alleged offense was committed, as the jury under the charge of the court below must of necessity have found, within the limits of the Third judicial district of the territory of Arizona, and within the time fixed as the limitation by the so-called "Edmunds Anti-Polygamy Law." To apply the existing territorial law defining marriage and prescribing the method of its proof, in our opinion was clearly within the rule recognized in all cases where congressional laws are sought to be enforced by courts possessing jurisdiction of United States cases in the territories. The assumption and assertion that the appellant was indicted under the law of congress, and tried under and by the rule of the territorial law, is not warranted by the facts disclosed by the record. The resort by the court to the territorial legislative definition of marriage, and the method of

its proof, suggests itself to us as not only proper, but the only course to pursue in the absence of congressional statute. *Clinton* v. *Englebrecht,* 13 Wall. 434; *Hornbuckle* v. *Toombs,* 18 Wall. 652; *Miles* v. *United States,* 103 U. S. 315; section 914, Rev. St. U. S.; *Reynolds* v. *United States,* 98 U. S. 145. The laws of the United States being silent on the subject, section 123, Comp. Laws Ariz. 1877, is the rule of decision in this case, and becomes applicable on the trial. Comp. Laws, § 21, p. 397; Comp. Laws, § 7, p. 571. The particular portion of the proceeding in the court below at which this objection is aimed by the seventh assignment of error is included in that part of the charge wherein the court read from the territorial statute, and commented as follows:

"This rule prevails, that where, in matters of practice, the statute laws of the United States are silent, in the territory or state where United States courts are held for the trial of causes under the United States statutes, the local statutes may be invoked for the purpose of interpreting the law governing the practice and conducting the proceedings of the court."

By a subsequent portion of the charge it is apparent, and the jury was so charged, that the interpretation referred to applied only to the constituent elements of a marriage contract, and to the method of its proof. This portion of the charge was confined to a reading of the statute, (section 1891, Comp. Laws Ariz.,) as follows:

"Sec. 1891. Marriage is considered in law as a civil contract to which the consent of the parties is essential."

As to the manner of proving polygamous marriages, the court referred to a portion of section 123, *c.* 10, Comp. Laws, which reads as follows:

"It shall not be necessary to prove either of said marriages by the register or certificate thereof, or other record evidence, but the same may be proved by such evidence as is admissible in other cases; and when such second marriage shall have taken place without this territory, cohabitation in this territory after said second marriage shall be deemed the commission of the crime of bigamy."

It is clear that, in the absence of this statute, a charge

to the jury instructing them as to the character of evidence to prove a marriage embodying the essential points covered by this statute would have been correct. It is beyond dispute that this reference to the statute is unobjectionable, when taken in connection with the other portions of the charge by which the jury were distinctly instructed that they must be satisfied that the first marriage existed; that the second marriage was contracted within the territory, and within the time fixed by the United States defining and punishing polygamy.

Upon a careful examination of the whole record, including the charge of the court in the three cases, we are satisfied that the defendants had fair and impartial trials. It is due the trial court to state that no precedents existed in this territory by which it might be guided in cases under the so-called "Edmunds Act." We fail to find in the record any material error. For these reasons the court is of the opinion that the motion for a new trial was properly overruled, and that the judgment was correct.

PINNEY, J.—The facts in these cases are conceded to be about the same in each case. The record in the *Tenney Case* is the only one brought up. Six witnesses were called and sworn on behalf of the government. The defendant introduced no proof in his own behalf. The question is, do the facts as testified to make a case in the law? The evidence, as given by the different witnesses, is nearly the same, and consists mainly in admissions made from time to time by the defendant. Tenney, the proofs show, lived with two women in the same house, and by them had several children which were admitted by the defendant to be his children. The women were known as Mrs. Anna Tenney and Mrs. Eliza Tenney. At the store of Mr. Barth, the defendant gave orders to let his two wives, Anna and Eliza, have goods, which was done at different times. and paid for by him. Mr. Traner, the clerk at the store, testified:

"He has acknowledged to me that these two women were his wives; that it was better to have two wives than be running around after other women."

Mr. Barth testifies:

"He always gave us orders to let the women and children have what they wanted when they came to the store, and charge it to him. He paid the account. The general reputation is that these two women are defendant's wives. At the windmill, three or four years ago, first one came in, (Anna.) and he said, 'This is my wife;' and then when Eliza came in, he said, 'This is my other wife.' "

And to all of the witnesses the defendant has, at different times and places, stated that both these women were his wives. In *Miles* v. *United States*, 103 U. S. 304, the defendant was indicted for bigamy. The indictment charged that "Miles did, on the twenty-fourth day of October, 1878, at Salt Lake county, in the territory of Utah, marry one Emily Spencer, and that afterwards, and on the same day, and at the same county, did marry one Catherine Owens." On the trial of that case certain declarations and admissions made by the defendant concerning his marriage were admitted in evidence. What those admissions were does not appear, but concerning them the Supreme court says:

"The declarations of plaintiff in error touching his marriage with Emily Spencer, admitted in evidence against him, appear to have been deliberately made, and under such circumstances as tended to show that they had reference to a formal marriage contract between him and her. We are of the opinion that the district court committed no error in admitting such declarations."

Counsel for defendant insists that the record in this case discloses no admissions by Tenney of any "formal marriage contract" with either Anna or Eliza, and no admission of any marriage contract at all, or marriage ceremony at all. It will not be denied but that the admissions and confessions of a defendant in a polygamy or bigamy case can be used and go to the jury for what they are worth. It is conceded by the able counsel in his argument in this case that if the admissions were precise declarations describing a time, a place, and a ceremony, that this would then become evidence of that ceremony. At the same time counsel insists that mere statements by defendant that these two women were his wives utterly fails to make such a case as

the law requires in actions of this character. I am not unmindful of the fact that confessions of marriage are sometimes made to justify the conduct and screen the party who happens to·be living in open adultery. A confession may also be ·made of a supposed marriage when the party is ignorant of the law, and may honestly suppose a marriage to have taken place, when in fact no lawful marriage ever took place; and hence some cases may be found where the courts refuse to hold a marriage proven upon the unsupported admissions of the defendant. Each case must necessarily depend upon the particular circumstances surrounding it. An admission, deliberately made, "This is my wife," means something. Webster defines "wife" to be: "The lawful consort of a man; a woman who is united in the lawful bonds of wedlock." Why should not an admission of this character be entitled to as much weight as the testimony of one who saw the marriage ceremony performed, or to as much weight as the admissions of a party which tended to show they had reference to a formal marriage contract? It seems to me that if a man deliberately admits that the woman he lives with is his wife, that this is at least *prima facie* evidence that there had been a marriage contract between the parties. And when we add to this the fact that the parties had lived together as husband and wife for a long time, raised children, and held themselves out to the world as husband and wife, this ought to be pretty good proof of marriage, and all this appears in evidence.

The importance of these cases has caused me to add this much to what has been written by my associate. The orders and judgment of the court below are affirmed.