## UNITED STATES v. HIGGERSON.

*(Circuit Court, D. Idaho.   June 1, 1891.)*

1. UNLAWFUL COHABITATION—EVIDENCE—TESTIMONY.
    In the trial of such offense, as well as of its kindred offenses of adultery and bigamy, as defined by the laws of the United States, proof of the existence of the marriage relation is pertinent; it being a collateral fact which aids in explaining the association of a man and woman, and tends to show whether such association is justified and innocent, or that of unlawful cohabitation.

2. MARRIAGE—EVIDENCE OF BY REPUTE.
    The general reputation in the community of the existence of the marriage relation is competent as tending to prove such relation, but is not alone sufficient to establish it.

*(Syllabus by the Court.)*

At Law.   Unlawful cohabitation.

*Fremont Wood,* U. S. Atty.

*James H. Hawley,* for defendant.

BEATTY, J.   The defendant is charged with the crime of unlawful cohabitation, in violation of section 33, 22 St. U. S. p. 31.   After his conviction in the third district court of the territory of Idaho, he appealed to the supreme court of such territory, whence the cause has reached this court. In asking the reversal of the judgment below, the defendant assigns as reasons therefor the insufficiency of the evidence, and errors of the court in the admission of evidence of general repute of marriage, and instructions sustaining such evidence, but upon this hearing has relied chiefly upon the alleged errors.   The testimony however, seems sufficient to justify the verdict.   It appears, among other things, by several witnesses, that there was no other family in the neighborhood by defendant's name but his; that there were two women there known by his name, and as his wives; that in the year 1888 defendant was found in a small house on his farm with two women and four or five small children, each woman having a small child eight or nine months old; that he said they constituted his two families; that he was afterwards seen by the same witness with the same two women in Soda Springs; that afterwards he had on his farm a house for each woman, not over a quarter of a mile apart; that the women had been seen there for over a year past, and when arrested he told the officer that one of the women was his second wife.   It cannot be said the jury reached an erroneous conclusion when they found these facts constituted unlawful cohabitation.   On page 21 of record this interrogatory appears:   "In that community who is her reputed husband? [It does not appear clearly which woman is meant, but probably the second wife.]   *Answer.* Higgerson."   And on page 23 is this: "*Question.* You stated that the husband of that woman is reputed to be the defendant.   *Answer.* Yes, sir."   And on page 28 the court, as part of its instructions, said:

"The court charges you, also, that the question as to whether one of the women named in the indictment is the wife of the defendant is a material issue, and must be proven beyond a reasonable doubt by competent evidence.

It cannot be assumed, and cannot be proven by guessing or common repute. As to the first or either wife the reputed acts of the defendant, and recognition by the defendant of such relation, is evidence of such relation as to either or both of the wives. Repute is a circumstance to be considered in connection with the facts and acts, though a man may not be convicted on reputation alone, even if it be the family of the defendant."

The question raised by the foregoing interrogatories and instruction is the right to establish any collateral fact which would tend to the proof of the offense charged, by the introduction of testimony of the general reputation in the community of the existence of such fact. The crime of unlawful cohabitation is the living with two or more women as wives; of treating and associating with them as such; the giving to the world the appearance that the marital relation exists with them. It is the living with them in the habit and repute of marriage. The statute is to prevent even the appearance of evil, and, as said by the supreme court of the United States, it is "to prevent a man from flouting in the face of the world the ostentation and opportunities of a bigamous household, with all the outward appearance of the continuation of the same relations which existed before the act was passed." The direct evidence to sustain this charge is any which shows that the defendant actually lived at the same time with two or more women, in such manner as would sustain the appearance of maintaining with them the marriage relation. To establish this principal fact, others, collateral in their nature, but bearing upon and tending to prove the main question, may be shown, and among such is that of marriage. It is true the offense charged here may be established without the proof, or even the existence, of actual marriage between the parties; nevertheless, the existence of such relation is a fact which would aid in showing why a man and woman associated with each other; whether their treatment of each other in the presence of their neighbor is that of husband and wife, or simply of acquaintances or friends; whether the favors, attentions, and assistance he gives her are those of the generous friend only, or of the husband. In so far as it explains these matters, it aids in the elucidation of the main issue, and is a pertinent fact. In these cases, and their kindred crimes of bigamy and adultery, no other collateral fact so frequently occurs as this. In such cases, is evidence of the general repute of its existence competent? If the propositions were to show that it was generally reputed in the community that the defendant was living in unlawful cohabitation, or, if charged with adultery, that he was guilty of that, it could not be entertained, any more than would be the evidence of general repute that a defendant committed the murder with which he might be charged. That the fact of marriage, when it is an incidental question in a cause, may be thus shown, has been a proposition of much controversy. If, however, there is any such question that may be so shown, it should be this. The proof of it is frequently required many years after and remote from the place of its occurrence, when the written evidence and the record of it may be lost or are inaccessible, when its eye-witnesses are dead or forgotten. Not only that, but in this coun-

try the laws governing it are unfortunately so varied, some not even requiring any record of it, or even a nuptial ceremony, that the difficulty of direct proof, and the expediency of permitting the indirect, become evident, and more apparent, in this, when the attempt is made to prove a marriage among that sect, which, though they keep a record of it, hide it from the eyes of the courts in the secret and mysterious chambers of the endowment house. Under such circumstances, why should not the fact that a man and woman have lived in a community with the apparent relation of husband and wife, have been received in society and been known as such, have so conducted themselves publicly as to lead their neighbors to believe them such, have by their acts established in the community a general reputation that they are married, be permitted as evidence tending, at least, to show the existence of such relation?

The proposition that marriage can be proven only by the eye-witnesses thereof, or by record evidence, is now overthrown by the great weight of authority, including that of the United States supreme court, which, in the *Miles Case*, 103 U. S. 311, says "that to hold in a bigamy case the first marriage can be proven only by eye-witnesses is to apply to this offense a rule not applicable to any other." In that case the declarations of the defendant were admitted. It is said that "cohabitation and reputation of being husband and wife are usually considered together in questions concerning the proof of marriage. Some authorities favor the idea that reputation, of itself, may be received as sufficient proof, *prima facie*, but it must be uniform and general; and, if there be a conflict in the repute, it will not establish the marriage. On the other hand, its sufficiency in any case has been denied." Also that "such evidence was, after verdict, held sufficient, *prima facie*, to warrant the jury in finding the fact of marriage, the adverse party not having cross-examined the witness, nor controverted the fact by proof." In the proof of pedigree the facts of birth, marriage, and death, and the dates thereof, may be proven by reputation in all cases where they occur incidentally, and in relation to pedigree. 1 Bish. Mar. & Div. §§ 438, 540; 1 Greenl. Ev. §§ 103, 104, 107; *U. S.* v. *Tenney*, (Ariz.) 8 Pac. Rep. 295. These views are sustained by sufficient authority, as well as by reason, to justify their adoption, and in criminal as well as in civil cases. It must not, however, be concluded that proof of reputation of the marriage relation is alone sufficient; it is but one of the proofs; it only tends to establish the fact which, with other proofs, may become conclusive. This is what the instructions complained of, when all considered together, declare the law to be. They do not go beyond the law as settled by the weight of authority, and are even more favorable to the defendant than some of the authorities. To the contrary is cited the case of *U. S.* v. *Langford*, (Idaho,) 21 Pac. Rep. 409. This was a case of adultery, at the trial of which, the question, "What was the general repute in that community as to the relations existing between the defendant and Rhoda Dimmich?" was permitted. The full purport of the question cannot be gathered from the report of the case, or what relation between the parties it could be expected the answer to the question would develop; whether it would show,

or tend to show, simply the existence of the marriage relation, or whether, when considered in connection with the immediately preceding questions and answers, it would show directly that the relation sustained was the criminal one charged in the indictment. The reviewing court, however, seemed to treat the question as an effort to establish by common repute the existence between the parties of the bigamous relation charged in the indictment; to prove by common repute the crime itself. If such was the object of the question, the conclusion of the court was unquestionably correct. If, on the contrary, the court meant to declare that such evidence of the existence of the marriage relation was incompetent in any case, its view cannot be followed here.

It being concluded in this cause that the evidence was sufficient to justify the verdict, and that there was no error in the admission of the testimony, or in the giving of the instructions complained of, it is therefore ordered that the judgment appealed from be affirmed.